[Cite as *Fulton v. Fulton*, 2022-Ohio-2472.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| JESSICA L. FULTON | : | | JUDGES: |
| | : | | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | | Hon. W. Scott Gwin, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| TRAVIS J. FULTON | : | | Case No. 21CA000032 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Guernsey County
Court of Common Pleas, Domestic
Relations Divison, Case No. 20 DR
146


JUDGMENT:         Affirmed


DATE OF JUDGMENT:      July 18, 2022


APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

EMILY TARBERT         SILAS M. PISANI
401 Market St., Suite 209      One Cascade Plaza, Suite 2210
Zanesville, Ohio 43701       Akron, Ohio 44308

*Baldwin, J.*

{¶1}   Defendant-appellant Travis J. Fulton appeals from the November 18, 2021 Entry of the Guernsey County Court of Common Pleas, Domestic Relations Division.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On March 16, 2020, appellee Jessica L. Fulton filed a complaint for divorce against appellant Travis J. Fulton. Appellant filed an answer and counterclaim on June 8, 2020. A hearing before a Magistrate was held on May 11, 2021. The Magistrate, in a Decision filed on June 11, 2021, recommended that the parties be granted a divorce. The Magistrate further recommended that the business known as the Wagon Wheel Restaurant, a bar and grill,, and any debts associated with it be deemed appellant's separate property. The trial court, in a Judgment Entry filed on June 11, 2021, approved and adopted the Magistrate's Decision.

{¶3}   Appellant then filed objections to the Magistrate's Decision on June 23, 2021, arguing, in part, that he objected to the "finding that the business/restaurant owned by the parties and acquired during the marriage was not marital property and that the business/restaurant should have been calculated into the property division sheet of the Magistrate."   The trial court, in an Entry filed on November 18, 2021, overruled the objections.

{¶4}   Appellant now appeals, raising the following assignment of error on appeal:

{¶5}   "I. THE MAGISTRATE ERRED WHEN SHE DID NOT INCLUDE THE DEBT CONNECTED TO THE RESTAURANT AS MARITAL PROPERTY AND THEREFORE DID NOT EQUALLY OR EQUITABLY DIVIDE THE MARITAL PROPERTY AS REQUIRED BY THE ORC."

I

**{¶6}** Appellant, in his sole assignment of error, argues that the trial court erred in finding that the debt to the Wagon Restaurant was appellant's separate property and not marital property. We disagree.

**{¶7}** Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall ... determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence. *Chase-Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion. *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10 CA 22, 2010-Ohio-6593. In order to find that there was as abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable or unreasonable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 218, 218, 450 N.E.2d 1140.

**{¶8}** At the hearing before the Magistrate, appellee testified that the Wagon Wheel Bar & Grill was purchased during the marriage, but that she did not assist in running the business. Appellee testified that she tried to assist, but that appellant did not like her helping out and that she tried to but "it didn't work out very well." Transcript at 20. According to her, appellant primarily ran the business.

**{¶9}**    Appellee testified that the purchase price for the bar was $215,000.00. She testified that the PNC business checking account was related to the Wagon Wheel and that she was not listed on such account and did not have access to it. She did not have any involvement in the operations or finances of the bar. She testified that she did not have access to other accounts titled to appellant and the Wagon Wheel.

**{¶10}** Debbie Fulton, appellant's mother, testified that she loaned appellant money for the purchase of the bar. She testified that she withdrew $230,000.00 from her account to help her son and that she expected to be paid back. She testified that the money was not a gift. She further testified that she withdrew another $5,000.00 in cash and gave it to appellant as a loan for an earnest money deposit. Fulton loaned appellant another $30,000.00 to help fix up the bar/restaurant and another $20,000.00 to restock food and beer and other inventory. In June of 2018, she loaned appellant another $20,000.00 for payroll. Fulton testified that in total, she loaned appellant a total of $325,000.00.

**{¶11}** On cross-examination, Fulton testified that the $235,000.00 that she had loaned appellant was from a joint account that she had with Lauren, her granddaughter who had received a settlement from a lawsuit. A lending statement that was notarized on June 8, 2019 stated that Lauren had loaned appellant $235,000.00 to purchase the Wagon Wheel. However, Fulton testified that $230,000.00 of the money was from her joint account with Lauren while $5,000.00 was cash from her safety deposit box. She testified that the money was being repaid to Lauren but that any payment receipts were made out to her because Lauren was in a bad place. The following is an excerpt from Fulton's testimony:

{¶12} Q. You testified that the original loan of $230,000 depending on which document you believe, one says 235 from Lauren, ones says 230 from you, is - - was for the purchase of the bar.

{¶13} A. Yes.

{¶14} Q. What did you believe the purchase price to be?

{¶15} A. 235.

{¶16} Q. Okay. Well, could you turn to Exhibit B? I'm sorry. That's the wrong number - - or letter. Exhibit F.

{¶17} THE COURT: F?

{¶18} MS. TARBERT: F.

{¶19} Q. That's a settlement statement from the sale of the bar, which is dated May 25th of 2017.

{¶20} A. Um-huh.

{¶21} Q. And you'll see there that the gross amount that was due from the borrower on Line 301 was $215,258.69. Correct?

{¶22} A. Yes, ma'am.

{¶23} Q. So who told you that the purchase price was 230?

{¶24} A. Travis and Jessica.

{¶25} Q. Okay. So until today, you thought they paid - - they used all that money to purchase the bar?

{¶26} A. Yes, ma'am.

{¶27} Transcript at 129-130.

**{¶28}** Fulton testified that appellant was repaying $1,000.00 a month. On redirect, Fulton testified that appellee was aware of that the bar was being purchased and of the purchase price and that she was aware of the manner in which the purchase and subsequent renovations were being financed. Appellant testified that he discussed purchasing the bar with appellee and that she was in favor of it. The following is an excerpt from appellant's testimony:

**{¶29}** Q. All right.  And you were still together – living together when this bar was purchased; is that correct?

**{¶30}** A. Yes, sir.

**{¶31}** Q. And did she in any way, shape, or form work in the bar or do anything to assist with regard to the operation of the bar at any point in time?

**{¶32}** A. I'm sorry.  I didn't - -

**{¶33}** Q. Did she, Jessica, do anything at any point in time to assist in the operation of the bar before the two of you separated?

**{¶34}** A. Yes. She - -

**{¶35}** Q. What sorts of things did she do?

**{¶36}** A. Yes.  Most - - most of like dealing with my tax lady and that part of the business, she did.  I pretty much run - - actually run - - tried to run the bar and did all the ordering and stuff like that.  She did payroll or turned in the payroll, did all the talking with our tax lady, event planning, made the work scheduled.

**{¶37}** Transcript at 151-152.

**{¶38}** Appellee, on direct examination, testified that she did the scheduling of the employees at the bar, but was not involved in payroll and finances.

**{¶39}** The Magistrate, in her Decision, recommended that all debt associated with the Wagon Wheel be deemed appellant's separate property and not marital debt. In so recommending, she stated that it would be inequitable to require appellee to pay "any debt on the business that [appellant] alone has an interest in and control over." After appellant filed objections, the trial court in its Entry, stated in relevant part, as follows:

> The Magistrate found beginning at paragraph 16 various findings regarding the real estate located at 11970 Claypike Road, Buffalo, Ohio known as the Wagon Wheel Restaurant. Conflicting testimony was presented regarding the exact amount of the purchase price. The Magistrate further found at paragraph 19 that additional monies were provided on at least four (4) to possibly five (5) dates.
>
> Debra Fulton testified beginning at page 108 of the transcript regarding these additional sums of money. At page 109, Debra Fulton testified that some of the money was used for flooring and a new cooler. Other monies were used for payroll and to restock inventory for the bar/restaurant. The Magistrate further found that the Defendant and Debra Fulton's testimony were not credible as it related to the Claypike Road, Buffalo, Ohio property.

**{¶40}** As noted by the trial court in its decision, the Magistrate, as trier of fact, was in the best position to assess the credibility of the witnesses. The Magistrate found the testimony of appellant and Debra Fulton not to be credible because there was conflicting evidence regarding who loaned the money and how much was being repaid. Moreover, handwritten notes for the loans made to appellant were signed by Fulton and appellant

only. We find that the trial court did not abuse its discretion because the trial court's decision was not arbitrary, unconscionable or unreasonable. We find that there was sufficient credible evidence supporting the decision that appellant alone had an interest in and control over the business.

{¶41} Appellant's sole assignment of error is, therefore, overruled.

{¶42} Accordingly, the judgment of the Guernsey County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Gwin, J. concur.